IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DASHAAN R. SMITH,                :      Civil No. 3:22-cv-1382
                                 :
            Plaintiff            :      (Judge Mariani)
                                 :
      v.                         :
                                 :
SUPERINTENDENT T. MCGINLEY,      :
et al.,                          :
                                 :
            Defendants           :

## MEMORANDUM

Plaintiff Dashaan Smith ("Smith"), an inmate who was housed, at all relevant times, at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Township"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent T. Mcginley, Lieutenant Rice, Captain Dolton, Grievance Officer A. Wheary, D. Varner, J. Gibson, G. Burns, Unit Manager J. Dunn, and Correctional Officer Haines. Presently pending before the Court is Defendants' motion (Doc. 54) for summary judgment. The motion is ripe for resolution. For the reasons set forth below, the Court will grant Defendants' motion and enter judgment in their favor.

## I.    Statement of Undisputed Facts[1]

On June 3, 2022, Smith was temporarily transferred to SCI-Coal Township for purposes of a court hearing.  (Doc. 55 ¶¶ 1, 5; Doc. 63-1 ¶ 1).  Upon arrival at SCI-Coal Township, Smith was placed in the Restricted Housing Unit ("RHU").  (Doc. 55 ¶ 2; Doc. 63-1 ¶ 2).  He was also placed on administrative status.  (Doc. 55 ¶ 3).

On June 10, 2022, Smith left the facility to attend a court hearing and, upon his return to SCI-Coal Township, he was strip-searched by Defendant Haines.  (Doc. 55 ¶ 6).  The search was not performed properly by Defendants Haines; therefore, Defendant Rice instructed Haines to perform the strip search again.  (*Id.*).  Defendants maintain that, during this strip search, no officer touched Smith or directed any comments at him.  (*Id.* ¶ 7).  Smith contends that, after he left the RHU strip cage, Defendant Rice made derogatory comments about him.  (Doc. 63-1 ¶ 16).  Smith filed a Prison Rape Elimination Act ("PREA") report after the strip search because he "felt humiliated, intimidated, and sexually abused/harassed."  (*Id.* ¶¶ 15, 17).

On June 15, 2022, Smith left the RHU.  (Doc. 55 ¶ 4).

---

[1]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the parties' statements of material facts and exhibits.  (Docs. 55, 63-1).

II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

Defendants move for summary judgment on the following grounds: (1) Smith failed to

show the personal involvement of Defendants Wheary, McGinley, and Dolton; (2) Smith

failed to establish Eighth Amendment sexual harassment and conditions of confinement

claims; (3) Smith failed to establish a Fourteenth Amendment claim; (4) Smith failed to

establish a Fourth Amendment claim; and (5) Smith failed to establish First Amendment

4

retaliation and access to courts claims. (Doc. 56). The Court addresses each argument below.

## A.    Lack of Personal Involvement of Wheary, McGinley, and Dolton[2]

Defendants first move for summary judgment based on Smith's failure to establish the personal involvement of Defendants Wheary, McGinley, and Dolton. (Doc. 56, pp. 17-18).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

---

[2]    Although Defendants do not move for summary judgment based on a lack of personal involvement of Gibson, Burns, Dunn, and Varner, the Court observes that Smith failed to submit any evidence that these four individuals were personally involved in the alleged constitutional violations.

It is apparent from Smith's submissions that the only role of Defendants Gibson, Burns, and Dunn is connected to their positions on the Program Review Committee ("PRC"). (Doc. 1 ¶ 17). Smith asserts that he was interviewed by the PRC on June 8, 2022, regarding his request for placement in general population. (*Id.*; Doc. 62-2, pp. 50-51). The PRC decided to continue Smith's placement in the RHU, and he was ultimately released seven days later on June 15, 2022. (Doc. 1, p. 8). Nothing in the undisputed facts of this case suggests in any way that the PRC infringed upon Smith's constitutional rights. Even if the deprivations that Smith allegedly suffered in the RHU violated his Eighth Amendment rights—which the Court finds do not amount to an Eighth Amendment violation—the PRC members cannot be held liable because there is no evidence that they were personally involved in those deprivations.

The only role of Defendant Varner, the Chief Grievance Coordinator, is related to her involvement with the grievance process. (Doc. 1 ¶¶ 9, 19). However, a claim that Defendant Varner violated Smith's constitutional rights regarding her handling of his grievances, fails as a matter of law, and she is entitled to summary judgment. *See Mincy v. Chmielsewski*, 506 F. App'x 99 (3d Cir. 2013) (an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement).

> immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode,* 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be

6

premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Smith failed set forth such claims, and liability cannot be imposed on Defendants Wheary, McGinley, and Dolton based on their positions and duties as supervisors. Accordingly, insofar as Smith's claims against Defendants Wheary, McGinley, and Dolton rely on a *respondeat superior* theory of liability, they are entitled to judgment as a matter of law.

Additionally, any attempt to hold Defendants Wheary and McGinley liable based on their mere involvement in the grievance process also fails. (Doc. 1 ¶ 19; Doc. 55-2, Deposition of Dashaan R. Smith ("Smith Dep."), Notes of Transcript ("N.T.") 23:18-25, 24:1-11). It is well-established that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783

7

F.Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). *cert denied*, 510

U.S. 829 (1993). Thus, any claims against Defendants Wheary and McGinley that are

premised on their responses to grievances or lack thereof, fail because dissatisfaction with

a response to an inmate's grievance does not support a constitutional claim. *See Brooks v.*

*Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials

responded inappropriately to an inmate's later-filed grievances do not establish the

involvement of those officials and administrators in the underlying constitutional

deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that

involvement in the post-incident grievance process is not a basis for liability).

For all the foregoing reasons, Defendants' motion for summary judgment will be

granted based on a lack of personal involvement of Wheary, McGinley, and Dolton.

## B.   Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on

prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several

types of Eighth Amendment claims, including claims alleging: denial of, or inadequate

access to, medical care; exposure to adverse conditions of confinement; the use of

excessive force; and failure to protect from assaults by other inmates. An Eighth

Amendment claim includes both objective and subjective components. *See Wilson v.*

*Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the

alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1.    *Sexual Harassment Claim*

Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"). To state an Eighth Amendment excessive force claim, the inmate must establish that the force used by the prison official was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The court must consider the following factors to determine if the excessive use of force states a claim under § 1983: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) [w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Graham v. Connor*, 490 U.S. 386, 390 (1989) (citations and internal quotations omitted).

9

Based on the record before the Court, Smith failed to state an Eighth Amendment claim based on excessive force.  Smith does not establish that the strip search was anything other than a routine search when he returned to SCI-Coal Township after a court appearance and was placed in the RHU on administrative status.  While Smith may believe that the strip search policy was unreasonable, he presents no evidence to support such a claim.  Nor does he establish that the search was unreasonably intrusive.  Smith only asserts that he was "afraid" and that Defendants Haines' use of a flashlight during the strip search was unjustified.  (Doc. 63, p. 12).  He has not alleged and has not come forward with facts of record showing that there was any physical touching, harm, or force involved in the strip search.  Furthermore, an allegation that a strip search was degrading or embarrassing fails to state a constitutional violation.  *See Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution"); *Brown v. Blaine*, 185 F. App'x 166, 170 (3d Cir. 2006) ("[w]hile we recognize that Brown may have suffered embarrassment and humiliation while the search was being conducted, we cannot conclude that Brown's constitutional rights were violated by the search procedures employed.").

Smith also contends that, after he left the RHU strip cage, Defendant Rice made the following vulgar comment to him: "I like your little ass, I can make you whatever I want." (Doc. 63-1 ¶ 16; Doc. 62-2, pp. 52-53).  Defendant Rice's alleged statement to Smith, without any accompanying physical injury, does not amount to malicous behavior violative

of the Eighth Amendment. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012)

("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the

Eighth Amendment."). Smith does not assert that he suffered any physical injury or that any

of the Defendants used any physical force on him. Smith cannot state a claim that his

constitutional rights were violated based upon allegations of only verbal harassment or

threats. No matter how offensive the language that Defendant Rice allegedly used towards

Smith, that alone does not give rise to a constitutional claim. Smith's claim of verbal abuse

is not cognizable under § 1983. *See Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009)

("Verbal abuse of a prisoner, even of the lewd variety [ ], is not actionable under § 1983.").

Accordingly, Defendants are entitled to summary judgment on this Eighth

Amendment claim.

### 2. *Conditions of Confinement Claim*

The Eighth Amendment's prohibition of cruel and unusual punishment imposes

duties on prison officials to provide prisoners with the basic necessities of life, such as food,

clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*,

511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that

conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of

proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently

serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and

"(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948

F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

To satisfy the first requirement, Smith "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the-circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. *McClure*, 820 F. App'x at 128.

It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances. "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 39-40 (2002); *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program."). Rather, "the

prison has a penological interest in the housing placement of its inmates and '[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise.'" *Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013) (quoting *McKune*, 536 U.S. at 39).

Here, the Court finds that Smith failed to establish an excessive risk to his health or safety and failed to establish that any of the Defendants were subjectively aware of facts from which the inference could reasonably be drawn that his health or safety were at risk.

Smith asserts that his Eighth Amendment rights were violated because of the conditions of confinement he encountered in the RHU at SCI-Coal Township. (Doc. 1 ¶¶ 15-17). Smith maintains that his temporary placement in the RHU—from June 3, 2022 through June 15, 2022—resulted in the inability to use the telephone, denial of mailing envelopes, temporary placement in a cell with no hot water for three days, inability to use cleaning products to clean his cell, and inability to purchase items from the commissary. (*Id.*; *see also* Doc. 63, p. 17). The Court finds that Smith has not established the objective element of his claim, i.e., that the claims rise to the level of conduct that may be deemed inhumane or resulted in the deprivation of the minimal civilized measures of the necessities of life. Further, the Third Circuit has consistently held that the conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions,

13

alone, do not violate the Eighth Amendment). Smith's assertions that he was denied

telephone privileges and envelopes, placed in a cell without hot water and cleaning

supplies, and denied commissary are insufficient to state a claim under the Eighth

Amendment. The loss of such useful, but minor privileges, simply does not rise to the level

of a sufficiently serious deprivation of life's necessities. *See Griffin*, 112 F.3d 703, 709 (no

Eighth Amendment violation where plaintiff's confinement in administrative custody did not

"involve a deprivation of any basic human need"); *see also Williams v. Armstrong*, 566 F.

App'x 106, 109 (3d Cir. 2014) (*per curiam*) (inmate failed to state an Eighth Amendment

claims where "he [did] not allege that he was denied any of life's necessities, and the

duration of his time in the RHU was 112 days"); *Johnson v. Burris*, 339 F. App'x 129, 131

(3d Cir. 2009) (holding that administrative segregation and loss of minor privileges are

insufficient to state a conditions of confinement claim).

As to the second requirement, Smith must show "that the prison official 'knows that

inmates face a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it.'" *Porter*, 974 F.3d at 444 (citations omitted). The second

element is subjective, and the "prison official must both know of and disregard an excessive

risk to inmate health and safety." *Mammana*, 934 F.3d at 373. "In other words, 'the official

must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S.

at 837). Smith has failed to show a dispute of material fact as to whether any of the

14

Defendants knew about the allegedly inhumane conditions of the RHU, or if they did, when they were made aware of it and how long thereafter the conditions were permitted to exist. Thus, Smith has failed to support a finding on the subjective prong of the Eighth Amendment regarding his conditions of confinement claim.

In sum, Smith has failed to submit any evidence that the conditions he encountered in the RHU at SCI-Coal Township rise to the level of a constitutional violation. The Court will grant Defendants' motion with respect to the Eighth Amendment conditions of confinement claim.

### C.   Fourteenth Amendment Claim

Smith alleges that his Fourteenth Amendment due process rights were violated based on his placement in the RHU. The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Prisoners have no inherent constitutional right to any particular security classification or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."). Rather, in the prison context, "[d]ue process protection for a state created liberty interest is…limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin*, 112 F.3d at 706 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or

punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486); *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest."). In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). In determining whether a hardship is atypical or significant, the relevant comparator is the general population. *Id.* at 564.

Smith contends that he was improperly placed in the RHU from June 3, 2022 through June 15, 2022, upon his arrival at SCI-Coal Township. (Doc. 1 ¶ 17; Doc. 55-2, Smith Dep., N.T. 14:22-25). Smith failed to establish a triable due process claim based on his placement in the RHU. With regard to the limited duration of time Smith spent in the RHU on administrative status, he fails to state a constitutional claim. *See Fantone*, 528 F. App'x at 128-29 (finding no procedural due process claim when inmate complained of thirty-five days in isolation, and the court stating, "[w]e have held that this type of confinement does not constitute an 'atypical and significant hardship' so as to trigger due process

16

rights.") (citation omitted); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (finding inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*); *Griffin*, 112 F.3d at 706 (finding that fifteen months in segregation was not an atypical and significant hardship); *Smith*, 293 F.3d at 654 (stating that seven months' disciplinary confinement "does not, on its own, violate a protected liberty interest as defined in [*Sandin*]."). Defendants are entitled to an entry of summary judgment on the Fourteenth Amendment due process claim.

### D.   Fourth Amendment Claim

Inmates do not have a Fourth Amendment right to be free of strip searches under all circumstances. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *see also Watson v. Secretary Pennsylvania Dep't of Corrections*, 436 F. App'x 131, 136 (3d Cir. 2011). Although strip searches constitute a "significant intrusion on an individual's privacy," *United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where prison officials conduct such searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-311 (3d Cir. 2010), *affirmed*, 566 U.S. 318 (2012).

When determining the reasonableness of a search, courts must balance "the need for the particular search against the invasion of personal rights that the search entails" and

consider "the scope of the particular intrusion, the manner in which it is conducted, the

justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 558-59

(holding that the prison's policy of strip and visual body cavity searches, requiring inmates to

stand naked, lift their genitals and bend over and spread their buttocks for visual inspection,

did not violate an inmate's Fourth Amendment rights); *see also Brown*, 185 F. App'x at 169-

70 (3d Cir. 2006) (finding no constitutional violation where inmate was required to lift his

genitals, spread his buttocks, and then place his hands on his head and sweep his mouth

with his fingers).

The Supreme Court also held that it is constitutional to conduct a full strip search of

an individual detained in the general population of a jail, regardless of the reason for

detention or the existence of reasonable suspicion that the individual is concealing

something. *Florence*, 566 U.S. at 328 (explaining that "correctional officials must be

permitted to devise reasonable search policies to detect and deter the possession of

contraband in their facilities"); *see also Small v. Wetzel*, 528 F. App'x 202, 207 (3d Cir.

2013) (holding that it is constitutional to conduct a full strip search of an inmate in general

population, "regardless of the reason for detention or the existence of reasonable suspicion

that the individual is concealing something") (citing *Florence*, 566 U.S. 318).

Here, Defendant Haines conducted the strip search on June 10, 2022, when Smith

returned to SCI-Coal Township after a court proceeding.  (Doc. 55 ¶ 6).  The search was not

performed properly by Defendant Haines; therefore, Defendant Rice instructed him to

18

perform the strip search again. (*Id.*).   Under similar circumstances pertaining to inmate

movement through a facility, the Third Circuit Court of Appeals has held that prison officials

may conduct visual body cavity searches when an inmate enters and exits his cell in a

restricted housing unit, if such searches are performed in a reasonable manner. *Millhouse*

*v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559-60); *see also*

*Brown*, 185 F. App'x at 169-70 (upholding the constitutionality of a visual body cavity search

performed on a prisoner upon his reentry into a restricted housing unit where the plaintiff did

not "challeng[e] the need for the search, but rather, the manner in which it was performed").

Moreover, Pennsylvania Department of Corrections' Policy 203, Searches of Inmates and

Cells, explicitly provides that "[a] strip search shall be conducted when necessary for the

security and good order of the facility, including [in] the following situations…upon reception,

return from court, and return after the inmate has left the facility reservation for any reason."

DC-ADM 203, Section 2(B)(1)(c), available at:

https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/203%20Searches%20of

%20Inmates%20and%20Cells.pdf (last accessed May 28, 2024).   Smith fails to establish

that the actions of Defendants Haines and Rice went beyond a reasonable strip search on

this single occasion.   The strip search was conducted upon entry to the RHU at SCI-Coal

Township after returning from court, as is required by institutional policy.   Defendants are

entitled to an entry of judgment on Smith's Fourth Amendment strip search claim.

E.      **First Amendment Claims**

1.      *Retaliation Claim*

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005) (nonprecedential).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive

20

temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002). With these elements in mind, the Court will address Smith's retaliation claim.

Smith appears to assert that he attempted to speak to his attorney but was prevented from doing so, and that his placement in the RHU constituted a retaliatory act. (Doc. 63, pp. 15-18). Assuming that Smith's attempt to speak to his attorney constituted constitutionally protected activity, he nevertheless failed to establish that any Defendants took any adverse action.

Prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215 225 (1976). Therefore, in general, a transfer from one cell or bunk assignment to another is insufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g.,*

21

*Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *21 (D.N.J. Mar. 30, 2012) *aff'd*, 489

F. App'x 544 (3d Cir. 2012) ("Because Smith has no protected constitutional right to a

housing assignment, he cannot claim 'adverse action' when his housing assignment was

changed."); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *11 (M.D. Pa. Mar.

30, 2012).  Rather, a plaintiff must allege that the impact of the housing change was

sufficiently negative so as to constitute an adverse action.  *See, e.g.*, *Bistrian v. Levi*, 696

F.3d 352, 376 (3d Cir. 2012) (holding that conditions of confinement in a particular prison

housing unit may deter a person of ordinary firmness from exercising his First Amendment

rights); *Allah*, 229 F.3d at 225 (same).

The decision to transfer an inmate is not retaliatory where it serves a legitimate

penological interest.  *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010).  Defendants

have an interest in maintaining order and security and the decision to transfer an inmate to

another facility for purposes of a court proceeding, and placement of an inmate in the RHU,

is a decision that rests with prison officials.  It is undisputed that Smith was temporarily

transferred to SCI-Coal Township for purposes of a court hearing.  (Doc. 55 ¶¶ 1, 5; Doc.

63-1 ¶ 1).  Smith has wholly failed to submit any evidence that his transfer and placement in

the RHU were adverse actions.  Because Smith has failed to establish an adverse action—

and, thus, has not set forth a claim for retaliation—the Court need not reach the third prong

of a claim for retaliation.  Nonetheless, even considering the third prong, Smith asserts that

he was placed in RHU in retaliation for his complaint about talking to his attorney, however

the chronological sequence of these events does not support this argument because Smith was placed in the RHU upon arrival at SCI-Coal Township, and well-before his complaint regarding the ability to speak to his attorney.  The Court will grant Defendants' motion as it relates to the First Amendment retaliation claim.

### 2.    *Access to the Courts Claim*

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts.  Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation."  *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted).  Following *Lewis*, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997).  An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

23

Smith contends that his inability to speak with his attorney hindered his ability to successfully litigate his criminal case in the Court of Common Pleas of Schuylkill County. (Doc. 63, p. 17). During the relevant time, Smith was represented by counsel in his state court criminal case. (*See* Doc. 62-4). On June 10, 2022, Smith appeared in state court and entered a negotiated guilty plea for one count of aggravated harassment by a prisoner. (*Id.*). A second count of disorderly conduct was dismissed. (*Id.*). Smith was represented by counsel during his guilty plea hearing. (*Id.*). During the June 10, 2022 guilty plea hearing, the state court colloquied Smith on the written plea agreement that he signed and indicated that he understood. (*Id.*). Smith was sentenced to a term of imprisonment of 27 to 60 months. (*Id.*). Smith subsequently filed a counseled petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (*See id.*). A hearing was held in state court on the merits of the PCRA petition and the petition was ultimately denied. (*See id.*). To the extent that Smith believes he was unable to sufficiently prepare his defense, his mere hope or belief that he should have been successful is insufficient to meet the actual injury requirement. The state court records reveal that Smith knowingly entered into a written plea agreement.

Smith has not established that he was prevented from pursuing a nonfrivolous claim in his criminal case, especially in light of the fact that he pled guilty to one count of aggravated harassment by a prisoner, and, further, that his PCRA petition was denied, and the denial was upheld on appeal by the Pennsylvania Superior Court. (Doc. 62-4).

24

Because Smith failed to establish a basis for a legitimate challenge to his conviction, he has not established that he was denied access to the courts. *See Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

In failing to establish actual injury or some legal loss, Smith fails to create a genuine dispute of material fact as to whether Defendants' conduct imposed a substantial impact on him. *See Monroe*, 536 F.3d at 205-06 (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy.'") (citation omitted). Consequently, Defendants are entitled to summary judgment on the access to courts claim.

## IV.   Conclusion

Based on the foregoing, the Court will grant Defendants' motion (Doc. 54) and enter judgment in their favor. A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: May 28, 2024

25